IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,693

In the Matter of LARA M. OWENS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 14, 2018. Six-month suspension.

*Matthew J. Vogelsberg*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the brief for the petitioner.

*Lara M. Owens*, respondent, argued the cause and was on the brief pro se.

PER CURIAM:  This original proceeding in attorney discipline arises from Lara M. Owens' representation in two matters. On March 15, 2017, the office of the Disciplinary Administrator filed a two-count formal complaint against Owens alleging violations of the Kansas Rules of Professional Conduct (KRPC). After a hearing, a panel of the Kansas Board for Discipline of Attorneys determined Owens violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); KRPC 1.3 (2018 Kan. S. Ct. R. 292) (diligence); KRPC 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); KRPC 1.15(b) (2018 Kan. S. Ct. R. 328) (safekeeping property); KRPC 1.16(d) (2018 Kan. S. Ct. R. 333) (termination of representation); KRPC 8.1(b) (2018 Kan. S. Ct. R. 379) (failure to respond to a demand from a disciplinary authority); KRPC 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 207(b) (2018 Kan. S. Ct. R. 246) (failure to cooperate in disciplinary investigation).

The hearing panel unanimously recommended this court suspend Owens from the practice of law for a period of six months and the court reinstate her only after a hearing under Kansas Supreme Court Rule 219 (2018 Kan. S. Ct. R. 264). In proceedings before this court, Owens challenges the hearing panel's conclusions that she violated KRPC 1.15(b) and KRPC 1.16(d). In her brief, Owens requested the court place her on supervised probation for two years. During oral argument she asked this court to impose a sanction of published censure rather than to suspend her from the practice of law. We reject her arguments and conclude clear and convincing evidence establishes violations of KRPC 1.15(b) and KRPC 1.16(d). Because of Owens' many violations of the KRPC, the injuries caused to Owens' clients, and other factors, a majority of the court holds the appropriate sanction is a six-month suspension from the practice of law and the court reinstate her only after a hearing under Rule 219.

FACTUAL AND PROCEDURAL BACKGROUND

The Disciplinary Administrator received a complaint about Owens from her former client, G.T. He alleged Owens failed to advise him of the statute of limitations for an employment discrimination claim in Missouri, failed to timely file his lawsuit, and failed to timely communicate with him about the status of his case.

An attorney was assigned to investigate G.T.'s complaint. The investigator sent Owens a letter on July 13, 2016, asking her to schedule a meeting with him sometime between July 27 and August 1, 2016, to discuss the complaint. The investigator also requested Owens provide him with a summary of her communications with G.T. and a copy of her client file before the meeting. Owens did not respond to the letter. The investigator emailed Owens on August 24, 2016, noting she had not responded to his letter, which he attached to the email. He asked whether she intended to respond. Again, Owens did not respond. On August 31, 2016, the investigator sent a second letter to

2

Owens stating he had not received a response to his previous letter or email. The letter was returned as undeliverable with a note "UNABLE TO FORWARD."

In addition to the complaint filed with the Kansas Disciplinary Administrator, G.T. filed a complaint with the Missouri Office of Chief Disciplinary Counsel. Owens is also licensed in that state. The complaint was investigated by Division II of the Region IV Missouri Supreme Court Regional Disciplinary Committee, which found probable cause to believe Owens' conduct violated Missouri Supreme Court Rule 4-1.1 (competence) and Missouri Supreme Court Rule 4-1.3 (diligence). These rules are identical to KRPC 1.1 and KRPC 1.3. The Missouri Committee determined Owens' conduct warranted a formal letter of admonition under Missouri Supreme Court Rule 5.11(b), which it sent to Owens on August 23, 2016. The letter conveyed the Committee's finding that Owens committed the violations. It also informed her she had 15 days to reject the admonition and request a hearing, otherwise it would become part of her disciplinary record and be available to the public under Missouri Supreme Court Rule 5.31(b)(3). Owens ultimately accepted the admonition.

Before Kansas had acted on G.T.'s complaint, the Disciplinary Administrator received a second complaint. In this complaint, P.Z. stated she had paid fees to Owens after Owens agreed to undertake necessary proceedings to obtain an amended birth certificate for P.Z.'s granddaughter. P.Z. and the grandchild's mother, A.R., had first consulted with Owens on July 14, 2015. P.Z.'s deceased son, D.Z., had been engaged to A.R., and A.R. had been pregnant at the time of D.Z.'s death. Later DNA testing confirmed D.Z. was the child's father. P.Z. and A.R. wanted D.Z.'s name on the birth certificate. P.Z. advanced a fee of $2,000, and Owens agreed to prepare and file the appropriate documents and pleadings in the Jackson County, Missouri, Circuit Court.

Owens prepared the documents and sent them to A.R. to review and then sign and return. A.R. emailed Owens to inform her the documents had no signature lines. An employee of Owens' firm responded to A.R.'s email on October 14, 2015. Hard copies with signature lines were mailed to A.R. shortly thereafter. A.R. promptly signed the documents and mailed them back to Owens.

A.R. subsequently made several phone calls to Owens about the status of the case. When Owens did not return the calls, she emailed Owens six times between November 17, 2015, and August 8, 2016. In those emails, A.R. asked for a status update, referenced the unreturned calls, and asked whether Owens needed her to provide anything further so the pleadings could be filed. P.Z. also made repeated inquiries during that same time frame about the status of the case. Owens failed to respond to several of P.Z.'s and A.R.'s calls or to A.R.'s emails. In October 2016, P.Z. contacted Owens to request a billing statement. Owens provided no billing statement nor any refund of the advanced fee.

On December 19, 2016, P.Z. filed a complaint with the Disciplinary Administrator. She alleged Owens failed to timely file any documents or pleadings and failed to respond to several inquiries from P.Z. and A.R. about the status of the case. On December 20, 2016, the Disciplinary Administrator sent Owens a letter advising her of P.Z.'s complaint and asked for a written response within 20 days. Owens did not respond.

In January 2017, A.R. and P.Z. hired a new attorney to pursue their goal of amending the Missouri birth certificate to reflect that D.Z. was the child's father.

On January 12, 2017, an investigator from the Disciplinary Administrator's office assigned to investigate P.Z.'s complaint sent Owens a letter asking for a response within 10 days. Owens did not respond. On January 27, 2017, the investigator emailed Owens, noting her failure to respond to the previous letters and reminding her that her

4

participation in the investigation was required under Supreme Court Rule 207 and KRPC 8.1(b). The investigator asked Owens to call him that day. Owens emailed the investigator about three hours later and attached her response to P.Z.'s complaint. In her response, Owens stated:

> "'First, [P.Z.] is not my client. [A.R.] engaged my services . . . . [P.Z.] paid for the services but she is not the client. Because [P.Z.] is not the client, I could not divulge information to her. Without disclosing client information, I needed something from [A.R.] to file the petition. We called and left a message but did not hear back from her. I noted that I missed a call from [A.R.] recently; however, I had not had the opportunity to return the call as I was immersed in trial preparations and without an assistant while she was on her honeymoon. I need one item from [A.R.] to complete the necessary filing and am willing to continue to represent her.'"

Upon receiving Owens' email, the investigator sent a second email on January 27, 2017, asking Owens to provide a complete copy of her client file and all information in her possession (communications, court records, notes, and billing records) relating to the complaint within ten days. On February 6, 2017, Owens sent the investigator an email with several attached documents: (1) A.R.'s fee agreement; (2) an engagement letter to A.R. and P.Z. indicating Owens was representing both of them and requesting a waiver of conflict of interests, which A.R. and P.Z. signed; (3) unsigned pleadings and a proposed order; (4) a copy of the child's birth certificate; (5) a copy of a prior judgment changing the child's last name; and (6) a copy of D.Z.'s birth certificate. At times during these proceedings, Owens has represented she did not have signed pleadings from A.R., and, before this court, she said she did not have the child's birth certificate. But the panel found Owens did have signed copies of the pleadings. And we know Owens sent the child's birth certificate to the investigator. Also significant, Owens did not send several documents. For example, she did not provide evidence of receipt of any funds from P.Z., billing records, or records of communications with A.R. and P.Z.

5

On March 15, 2017, the Disciplinary Administrator filed a formal, two-count complaint. The first count related to Owens' representation of G.T. and alleged Owens violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 8.1, KRPC 8.4, and Kansas Supreme Court Rule 207. The second count related to the handling of the matter for A.R. and P.Z. The Disciplinary Administrator alleged Owens violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, KRPC 8.1, KRPC 8.4, and Kansas Supreme Court Rule 207 in that representation. Owens filed an answer to the complaint admitting to some of the alleged facts. She also filed a formal request to be placed on probation and provided a proposed plan of probation.

Owens and the Disciplinary Administrator entered into a joint stipulation about two weeks before the disciplinary hearing. Relating to her conduct in representing G.T. (Count I), Owens stipulated:

- She had failed to provide G.T. "timely updates regarding the status of his lawsuit after it was filed";

- The Missouri circuit court presiding over G.T.'s lawsuit had dismissed G.T.'s retaliatory discharge claim because it "was not timely filed";

- She had failed to respond to G.T.'s complaint and to letters and emails from the Disciplinary Administrator and the disciplinary committee's investigator;

- She had accepted Missouri's determination that her conduct warranted a formal letter of admonition, and, "[a]ccordingly, under Kansas Supreme Court Rule 202 (2017 Kan. S. Ct. R. 233) (concerning reciprocal discipline), [Owens'] Missouri admonition establishes violations of KRPC 1.1 and 1.3"; and

6

- Owens' "conduct, as described . . . in Count I, violated Kansas Rules of Professional Conduct 1.1, 1.3, 1.4, 8.1(b), 8.4(d), and Kansas Supreme Court Rule 207 (2017 Kan. S. Ct. R. 246)."

Owens also entered into stipulations relating to Count II arising from her contact with A.R. and P.Z.:

- Owens "contends that she never received the signed pleadings from [A.R.]. Regardless, the pleadings were never filed in circuit court."

- Owens "failed to respond to numerous inquiries from [P.Z.] and [A.R.] regarding the status of the case";

- Owens "failed to provide [P.Z.] with a billing statement";

- Owens "failed to refund any portion of the" money P.Z. advanced;

- Owens failed to respond to P.Z.'s complaint and a letter from the Disciplinary Administrator's office's investigator;

- Owens' "conduct, as described . . . in Count II, violated Kansas Rules of Professional Conduct 1.1, 1.3, 1.4, 1.15(b), 1.16(d), 8.1(b), 8.4(d), and Kansas Supreme Court Rule 207."

At the formal hearing, the Disciplinary Administrator, under Supreme Court Rule 203(d)(2)(vi) (2018 Kan. S. Ct. R. 234), presented evidence that Owens entered into a diversion agreement in 2013 for violating KRPC 1.3 (diligence), KRPC 1.4(a) (communication), KRPC 1.5(d) (fees), KRPC 1.15(b) (safekeeping property), and KRPC 1.16(d) (terminating representation). The misconduct began in early 2011. Owens

7

successfully completed diversion in early 2014. Owens was on diversion when she began representing G.T.

Owens presented evidence that a general practice physician saw her on May 4, 2017, diagnosed anxiety, and prescribed a course of medication. She testified her anxiety caused her to be unable to move A.R.'s case forward, to terminate properly her representation of A.R., and to cooperate in the investigation of P.Z.'s complaint. She also presented evidence that she had refunded P.Z. the fee on May 12, 2017—four days before the disciplinary hearing.

At the hearing, the Deputy Disciplinary Administrator asked Owens how she planned to obtain a practice supervisor. The panel agreed to keep the record open for 30 days to allow her to find one. The Deputy Disciplinary Administrator later requested the record remain open for 45 days (until June 30, 2017). By that date, Owens' supervising attorney was to provide the Disciplinary Administrator with a letter indicating he or she had reviewed Owens' files and confirmed Owens was current on all client matters and was complying with the terms of her probation plan. The Deputy Disciplinary Administrator also requested Owens provide evidence she was complying with all other terms of her probation plan. Owens did not object.

The Deputy Disciplinary Administrator reserved making a recommendation until the 45-day period had passed. If Owens complied with the Disciplinary Administrator's office's requests, it would recommend two years' probation with an underlying two-year term of suspension. Alternatively, it would recommend a six-month suspension with the requirement Owens undergo a reinstatement hearing under Supreme Court Rule 219.

On June 30, 2017, Owens sent the hearing panel and the Disciplinary Administrator a letter identifying her practice monitor and representing they had met.

8

Nothing else was included, and the practice monitor did not send anything. The Disciplinary Administrator's office objected to Owens being placed on probation, noting Owens' letter was the only communication it had received, Owens had not provided evidence of compliance with the probation plan, and the monitor had not reported that Owens was current on all client matters or complying with her proposed probation plan. The Disciplinary Administrator argued Owens should not be placed on probation and recommended she be suspended from the practice of law for six months and be required to undergo a reinstatement hearing.

The hearing panel issued its final hearing report on December 8, 2017. Based on the stipulated facts and other evidence presented at the hearing, it concluded Owens violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15(b), KRPC 1.16(d), KRPC 8.1(b), KRPC 8.4(d), and Kansas Supreme Court Rule 207. In determining the appropriate sanction, the panel considered the duty violated, Owens' mental state, the actual injury to her clients and the legal profession, and the aggravating and mitigating circumstances. The panel found Owens violated her duty to her clients to provide competent and diligent representation, to provide adequate communication, and to safeguard her clients' property. It also found she violated her duty to the legal profession by failing to cooperate in the disciplinary investigations. The panel found Owens did so knowingly and Owens' conduct caused actual injury to her clients and the legal profession.

The panel found aggravating factors of: (1) prior disciplinary offenses—her 2013 attorney diversion agreement; (2) a pattern of misconduct; (3) multiple rule violations; and (4) bad-faith obstruction of the disciplinary proceedings by intentionally failing to comply with requests for documentation and by failing to timely provide responses. It found the following mitigating circumstances: (1) Owens did not act with a dishonest motive; (2) Owens' anxiety had significantly contributed to her misconduct; (3) Owens had returned the fee to P.Z. before the formal hearing; (4) Owens had fully cooperated

9

with the disciplinary hearing and had admitted to the facts that led to the violations; and (5) Owens had expressed genuine remorse for the misconduct.

As for Owens' proposed probation plan, the panel found she had not complied with Supreme Court Rule 211(g) (2018 Kan. S. Ct. R. 251). Despite being given 45 more days to do so, she had not confirmed her compliance with the terms of her probation plan. The panel also noted that Owens had previously been given diversion for similar misconduct. While completing the diversion agreement, Owens committed similar misconduct in her representation of G.T. The panel found placing Owens on probation was not in the best interests of the legal profession or the citizens of Kansas. The panel concluded probation would not be an appropriate sanction. Instead, it unanimously recommended a six-month suspension and the requirement of a reinstatement hearing under Supreme Court Rule 219.

## DISCUSSION

In a disciplinary proceeding, we consider the evidence, the findings of the disciplinary panel, and the arguments of the parties to determine whether violations of the KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The hearing panel's findings of fact and conclusions of law are advisory only, "'but we give the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court.'" *In re Jones*, 286 Kan. 544, 547, 186 P.3d 746 (2008). The

10

hearing panel's and Disciplinary Administrator's recommendations are "advisory only and do not prevent us from imposing greater or lesser sanctions." *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017).

Owens was given adequate notice of the formal complaint to which she filed an answer. She was also given adequate notice of the hearing before the panel and of the hearing before this court. She timely filed exceptions to many findings in the panel's report. In her brief, she only addresses the panel's findings that she violated KRPC 1.15(b) and 1.16(d) and the panel's determination that probation would not be an appropriate sanction. Owens has thus abandoned her arguments about all other exceptions. See *In re Ireland*, 294 Kan. 594, 603, 276 P.3d 762 (2012) (failure to brief point for which respondent filed exceptions constituted abandonment of the issue).

As a result we find clear and convincing evidence supports the hearing panel's findings of fact related to its conclusions that Owens violated:  KRPC 1.1; KRPC 1.3; KRPC 1.4(a); KRPC 8.1(b); KRPC 8.4(d); and Kansas Supreme Court Rule 207(b) during the investigation of both G.T.'s and P.Z.'s complaints.

We turn to Owens' arguments about the panel's conclusions she violated KRPC 1.15(b) and KRPC 1.16(d) in her handling of the funds advanced by P.Z.

*Owens violated KRPC 1.15(b).*

KRPC 1.15(b) (2018 Kan. S. Ct. R. 328) provides:

> "Upon receiving funds or other property in which a client or third person has an
> interest, a lawyer shall promptly notify the client or third person. Except as stated in this
> Rule or otherwise permitted by law or by agreement with the client, a lawyer shall

*promptly* deliver to the client or third person any funds or other property that the client or third person is entitled to receive *and, upon request by the client or third person, shall promptly render a full accounting regarding such property.*" (Emphases added.)

The hearing panel based its findings, in part, on Owens' stipulations. Owens stipulated she had not presented a billing statement to P.Z. and, as of the date of the stipulations, had returned no unearned fee to P.Z. At the hearing, Owens distinguished between a billing statement and an accounting. A billing statement might contain privileged information, but an accounting would provide a more generalized description along the lines of what an attorney might submit in a fees request to a court. In this case, Owens felt she could not provide P.Z. a billing statement because P.Z. was not her client. But Owens admitted she did not provide P.Z. with the accounting P.Z. was entitled to as a third-party payer under Rule 1.15(b). Thus, Owens admitted she violated Rule 1.15(b) by holding P.Z.'s advancement, without an accounting, from July 14, 2015, to May 12, 2017. Moreover, Owens stipulated she had violated KRPC 1.15(b). Owens now suggests we should ignore the five-month or more delay in her giving a full accounting because eight days after she signed the stipulation and just days before the hearing she refunded the full fee.

Granted, neither the court nor the parties are bound by stipulations about questions of law. *City of Lenexa v. Board of Johnson County Comm'rs*, 237 Kan. 782, 784, 703 P.2d 800 (1985). But Owens failed to present her arguments to the hearing panel. Had she disputed a violation, the panel likely would have made additional findings of fact. Even so, because the facts on which her arguments are based are undisputed, we can analyze her new argument.

While the repayment acts as a mitigating factor relating to the sanction we impose, the belated payment does not erase the fact Owens violated KRPC 1.15(b). She provided

no billing statement or accounting and did not refund the money from July 2015 when P.Z. advanced the funds until the refund on May 12, 2017. Although Owens did ultimately return the money to P.Z., she did not do so *promptly*, especially when we consider the fact she had not done anything to advance the case for well over a year and A.R. and P.Z. had essentially stopped communicating with Owens in October 2016. And P.Z. filed a disciplinary complaint in December 2016, complaining about the lack of action on the case and lack of communication. Owens was promptly advised of the complaint.

If not before, A.R.'s and P.Z.'s dissatisfaction with Owens was crystal clear at that point. Yet Owens did not refund the fee for another five months. In *In re Hawkins*, 304 Kan. 97, 122, 373 P.3d 718 (2016), we concluded an attorney violated KRPC 1.16(d) when she delayed refunding the balance of a retainer for three months after representation of a client had ended. Likewise, the delay for several months after a client demands an accounting and the refund of any unearned fees results in a violation of KRPC 1.15(b).

Clear and convincing evidence supports the panel's findings. We conclude Owens violated KRPC 1.15(b).

*Owens violated KRPC 1.16(d).*

Owens presents the same arguments about KRPC 1.16(d). That provision states:

> "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law." (2018 Kan. S. Ct. R. 333.)

13

In her briefing, Owens does not argue about when her representation of A.R. terminated. And the record is less than clear on that precise point. But Owens' failure to argue the point means she has waived any such arguments. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011) (holding a point not briefed is considered waived and abandoned). She also stipulated to a violation of KRPC 1.16(d). While, as we have noted, the stipulation does not bind either Owens or this court, her failure to raise any arguments about the time when her obligations under KRPC 1.16(d) arose means we do not have findings on that point by the panel.

We know, however, that in December 2016 the Disciplinary Administrator advised Owens that P.Z. had filed a complaint. Although Owens replied by suggesting she was still willing to represent A.R., it was clear any relationship with P.Z. had terminated and P.Z. was entitled to the refund of any unearned portion of the advanced fee. Owens' proposed probation plan evidences she understood a refund was due because she stated her intent to make the payment. As we have discussed, there was about a seven-month gap between P.Z.'s last attempt to communicate with Owens in October 2016 and the return of the fee on May 12, 2017. And there was a five-month gap between Owens knowing through the Disciplinary Administrator that P.Z. had filed a complaint.

More salient to the triggering of the obligations under KRPC 1.16(d), when P.Z. filed the complaint—if not before—circumstantial evidence supports the panel's conclusion that representation had been terminated. Although P.Z. made the complaint, A.R. had also been asking for updates. And later events made it clear A.R. no longer intended for Owens to represent her. Effectively, Owens' representation of A.R. was terminated by Owens' inaction and unresponsiveness. But Owens gave no notice that A.R. should seek other representation—A.R. was left to do so on her own. And Owens made no immediate effort to refund the unpaid fees despite P.Z.'s complaint. Her repayment eventually came after five months—a period longer than the three-month

14

delay at issue in *In re Hawkins*, 304 Kan. at 122. And we concluded that delay resulted in a KRPC 1.16(d) violation.

We conclude clear and convincing evidence supports the panel's findings and that Owens violated KRPC 1.16(d).

*Owens did not satisfy Supreme Court Rule 211(g)(3).*

Supreme Court Rule 211(g)(3) (2018 Kan. S. Ct. R. 253) states:

"The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

"(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

"(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

"(iii) the misconduct can be corrected by probation; and

"(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas."

Owens argues the panel erred in finding she did not comply with Supreme Court Rule 211(g)(3). Yet she fails to address the panel's finding that she did not begin following her proposed probation plan before the hearing and did not provide the requested evidence of compliance despite being given another 45 days to do so. She has effectively abandoned the argument. See *Superior Boiler Works, Inc.*, 292 Kan. at 889; see also *In re Ireland*, 294 Kan. at 603. Clear and convincing evidence supports the panel's findings of fact about Owens' failure to comply with Rule 211(g).

Owens also did not identify a practice supervisor in her brief to this court. All we know about Owens' treatment is that she had one visit with a general practice physician who prescribed some medication. We do not know if she remains involved with the Kansas Lawyers Assistance Program or any other support group. She has provided us little to assure us her future conduct will be different or that a plan is in place to prevent or catch future issues. This is especially true since, at the hearing before this court, she could only tell us she thought she had someone who would agree to monitor her practice. Finally, she has violated the provisions of Rule 211(g)(5). That rule required her, before oral argument, to "provide an affidavit to the Disciplinary Administrator and the Clerk of the Appellate Courts that states that the Respondent is in compliance with the terms and conditions of the proposed probation plan." Supreme Court Rule 211(g)(5) (2018 Kan. S. Ct. R. 254).

Probation is not an appropriate sanction.

*Suspension is an appropriate sanction.*

As we have stated, before the hearing panel, the Deputy Disciplinary Administrator recommended a six-month suspension after Owens failed to timely comply with Rule 211. The panel considered the following ABA Standards for Imposing Lawyer Sanctions:

> "'4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.
>
> "'4.42 Suspension is generally appropriate when:
>
>> "'(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

16

"'(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

"'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'"

The panel found Owens knowingly violated duties owed to her clients and the legal profession, which caused actual injuries to her clients and the legal profession. It also found aggravating factors of: (1) prior disciplinary offenses; (2) a pattern of misconduct; (3) multiple offenses; and (4) bad-faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary process. These findings are properly supported by the record, and Owens does not address or dispute them in her brief.

Despite these findings, at the hearing before this court Owens asked for published censure. We unanimously disagree with her conclusion that this would be an appropriate sanction.

Owens engaged in a long period of similar conduct beginning in early 2011, which lead to her disciplinary diversion. There, Owens failed to promptly return a necessary document, despite several requests from a state agency; failed to communicate with her client and keep her reasonably informed of the status of the case; failed to advance her client's cases; failed to prepare a separate fee agreement upon agreeing to represent her client in a second case; and failed to return her client's file when requested. While she was on diversion, she violated many of the same KRPC in her representation of G.T. And then after Owens' diversion, she continued to violate many of these same provisions. The previous misconduct is substantially similar and, in part, nearly identical to her conduct in representing G.T. and A.R.

17

Granted, Owens' anxiety played a substantial part in her misconduct and she had not addressed it at the time of her diversion. Owens represented to this court that she has made progress. But there is no dispute that she acted knowingly, and there was a pattern of misconduct in both Count I and Count II based on Owens' failure to timely communicate with her clients, competently and diligently represent them, or advance their cases. Her conduct resulted in substantial harm to her clients. We agree there are mitigating factors. Owens did not act with a dishonest motive; her anxiety significantly contributed to her misconduct; and she returned the fee to P.Z. before the formal hearing.

That said, based on the nature of the misconduct, its duration and extent, the harm caused Owens' clients, and Owens' history of similar misconduct, a majority of the court holds the appropriate sanction is a six-month suspension. A minority of the court would impose a shorter period of suspension.

We also order a reinstatement hearing under Supreme Court Rule 219 before Owens' license can be reinstated. As the Disciplinary Administrator argues and the hearing panel found, a reinstatement hearing is appropriate given the evidence Owens presented about her anxiety and how it contributed to her misconduct. She argued her anxiety, when untreated, "is often overwhelming." Thus for the protection of the public, at a minimum, Owens must establish at a reinstatement hearing that she has received adequate treatment for her anxiety and that it is unlikely her anxiety will harm future clients.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Lara M. Owens be and is hereby disciplined by suspension for a period of six months in accordance with Supreme Court Rule 203(a)(2) (2018 Kan. S. Ct. R. 234) effective upon the date of filing of this decision; that she not be

18

granted probation; and that she undergo a reinstatement hearing under Supreme Court Rule 219(d) (2018 Kan. S. Ct. R. 264).

IT IS FURTHER ORDERED that respondent comply with Supreme Court Rule 218 (2018 Kan. S. Ct. R. 262).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

BEIER, J., not participating.
ROBERT P. BURNS, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Burns was appointed to hear case No. 118,693 vice Justice Beier under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.